UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

LUDY B. BELLARD                         DOCKET NO. 6:09-cv-01603

VERSUS                                  JUDGE DOHERTY

MICHAEL J. ASTRUE,                      MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL SECURITY

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be AFFIRMED and this

matter be DISMISSED WITH PREJUDICE.

### BACKGROUND AND THE COMMISSIONER'S FINDINGS

Ludy Broussard Bellard was born on August 11, 1957.[1]  Currently, she is 53

years old.  She dropped out of high school but obtained her GED.[2]  She has worked

as a sitter for elderly or disabled people and as a Certified Nurse Assistant ("CNA.")[3]

---

[1]      Rec. Doc. 7-6 at 2.

[2]      Rec. Doc. 7-3 at 49.

[3]      Rec. Doc. 7-3 at 50.

She has done janitorial work for an oil company and housekeeping work in a hospital.[4]  She also worked as a seamstress.[5]

In December 2004, Ms. Bellard was involved in a motor vehicle accident,[6] and on October  6, 2005, she was injured in a slip and fall accident at work.[7]  She claims that the injuries she sustained in the slip and fall left her disabled.[8]

On November 13, 2006, Ms. Bellard applied for a period of disability and/or for all Social Security insurance benefits to which she might be entitled,[9] claiming that she became disabled on October 6, 2005 due to back, neck, and leg injuries.[10] Ms. Bellard's medical records were reviewed, and it was determined that she had the residual functional capacity to perform light duty work.[11]  It was also determined that

---

[4]      Rec. Doc. 7-3 at 50.

[5]      Rec. Doc. 7-3 at 50.

[6]      Rec. Doc. 7-8 at 3-4, 6.

[7]      Rec. Doc. 7-8 at 17.

[8]      Rec. Doc. 7-3 at 51; Rec. Doc. 7-6 at 2; Rec. Doc. 7-7 at 104.

[9]      Rec. Doc. 7-6 at 2-4.

[10]      Rec. Doc. 7-6 at 2, Rec. Doc. 7-7 at 104.

[11]      Rec. Doc. 7-4 at 2-3.

she could still perform her past work as a seamstress.[12]   In response to this determination, Ms. Bellard requested a hearing.[13]

A hearing was held before an administrative law judge ("ALJ") on May 16, 2008.[14]  Ms. Bellard testified at the hearing,[15] and she was accompanied by a non-attorney representative, Marion R. Frye.[16]  A vocational expert, Beverly Major, also testified at the hearing.[17]  After the hearing, but before the ALJ rendered her decision, Ms. Frye submitted additional medical records to the ALJ,[18] which were considered by the ALJ in evaluating Ms. Bellard's alleged disability.[19]

The ALJ's unfavorable decision was rendered on September 23, 2008.[20]  The ALJ found that Ms. Bellard had severe impairments, including cervical degenerative disc disease, lumbar degenerative disc disease, obesity, recurrent depression, and

---

[12]     Rec. Doc. 7-4 at 2-3.

[13]     Rec. Doc. 7-5 at 6.

[14]     Rec. Doc. 7-3 at 45-63.

[15]     Rec. Doc. 7-3 at 48-58.

[16]     Rec. Doc. 7-3 at 47.

[17]     Rec. Doc. 7-3 at 57-62.

[18]     Rec. Doc. 7-10 at 22-38.

[19]     Rec. Doc. 7-3 at 28-29.

[20]     Rec. Doc. 7-3 at 20-34.

agoraphobia with panic.[21]  The ALJ further found that none of her impairments and
no combination of her impairments met or medically equaled a listed impairment.[22]
The ALJ also found that Ms. Bellard has the residual functional capacity to perform
light work, with the caveat that she can follow only simple three-step job instructions,
cannot interact with the general public, can only occasionally interact with coworkers,
and cannot do overhead reaching with her right hand and arm.[23]  The ALJ determined
that Ms. Bellard was unable to perform her past work as a seamstress,
sitter/companion, and nursing assistant but would be able to work as a general office
clerk, administrative support worker, or shipping and receiving clerk, and that these
jobs are available in significant numbers in the national economy.[24]  Thus, the ALJ
found that Ms. Bellard was not disabled under the Social Security Act.[25]

Ms. Bellard requested that the Appeals Council review the ALJ's decision.[26]
She also provided the Appeals Council with additional material concerning Ms.
Bellard's alleged mental impairment in the form of a "Mental Impairment

---

[21]     Rec. Doc. 7-3 at 26.

[22]     Rec. Doc. 7-3 at 29.

[23]     Rec. Doc. 7-3 at 31.

[24]     Rec. Doc. 7-3 at 33.

[25]     Rec. Doc. 7-3 at 34.

[26]     Rec. Doc. 7-3 at 5-6, 14-18.

Questionnaire" dated November 5, 2008 from Dr. Robert McManus of the Crowley Mental Health Clinic.[27]

On July 9, 2009, the Appeals Council notified Ms. Bellard that it had considered her representative's briefing to the Appeals Council[28] and the additional materials provided but had determined that there was no basis for changing the ALJ's decision.[29]  This lawsuit was then filed.

## ASSIGNMENT OF ERRORS

Ms. Bellard contends that the Commissioner's ruling is erroneous for two reasons.  First, she argues that the Appeals Council failed to follow its own policies and procedures following the receipt, after Ms. Bellard's hearing, of additional evidence concerning Ms. Bellard's depression and alleged mental impairment. Second, she argues that the administrative law judge posed a defective Step Five hypothetical question to the vocational expert at the hearing.

## STANDARD OF REVIEW

---

[27]     Rec. Doc. 7-3 at 7-13.

[28]     Rec. Doc. 7-3 at 14-19.

[29]     Rec. Doc. 7-3 at 3.

This Court's review of the Commissioner's decision is limited to determining whether that decision was supported by substantial evidence and whether the proper legal standards were applied in reaching that decision.[30]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[31]   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion; it is more than a mere scintilla and less than a preponderance.[32]   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[33]   Finding substantial evidence requires scrutiny of the entire record as a whole.[34]   In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[35]

## DISCUSSION

---

[30]   *Alfred v. Barnhart*, 181 Fed. App'x 447, 449 (5th Cir. 2006); *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001);

[31]   *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[32]   *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[33]   *Boyd v. Apfel,* 239 F.3d at 704.

[34]   *Singletary v. Bowen*, 798 F.2d at 823.

[35]   *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

-6-

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[36]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[37]  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[38]

In determining whether a claimant is disabled, the Commissioner uses a five-step sequential analysis, which requires analysis of the following:  (1) whether the claimant is currently engaged in substantial gainful activity (i.e., whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (i.e., whether the claimant can return to his

---

[36]    *Alfred v. Barnhart*, 181 Fed. App'x at 450; *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

[37]    42 U.S.C. § 423(d)(1)(A).

[38]    20 C.F.R. § 404.1572(a)-(b).

old job); and (5) whether the impairment prevents the claimant from doing any other work.[39]

The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.[40]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[41]

If the Commissioner determines that the claimant is disabled at any step, the analysis ends.[42]  If the Commissioner cannot make a determination at any step, he goes on to the next step.[43]  Before moving from Step Three to Step Four, the Commissioner assesses the claimant's residual functional capacity.[44]  This is a determination of the most the claimant can still do despite her physical and mental

---

[39]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  See, also, 20 C.F.R. § 404.1520.

[40]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[41]     *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[42]     20 C.F.R. § 404.1520(a)(4).

[43]     20 C.F.R. § 404.1520(a)(4).

[44]     20 C.F.R. § 404.1520(a)(4).

limitations, and it is based on all relevant evidence in the claimant's record.[45]  The

claimant's residual functional capacity is used at the fourth step to determine if the

claimant can still do her past relevant work. At the fifth step, it is used to determine

whether the claimant can adjust to any other type of work.[46]

In this case, the ALJ found, at Step One, that Ms. Bellard had not engaged in

substantial gainful activity since October 6, 2005, the alleged onset date of her

disability.[47]  At Step Two, the ALJ found that Ms. Bellard had the following severe

impairments:  cervical degenerative disk disease, lumbar degenerative disk disease,

obesity, recurrent depression, and agoraphobia with panic.[48]  At Step Three, the ALJ

found that Ms. Bellard did not have an impairment or combination of impairments

that met or medically equaled a listed impairment.[49]

The ALJ then found that Ms. Bellard has the residual functional capacity to

perform light work except that she can only follow simple job instructions,  she

cannot interact with the general public, she can only occasionally interact with

---

[45]     20 C.F.R. § 404.1545(a)(1).

[46]     20 C.F.R. § 404.1520(e).

[47]     Rec. Doc. 7-3 at 25.

[48]     Rec. Doc. 7-3 at 26.

[49]     Rec. Doc. 7-3 at 29.

coworkers, and cannot do any overhead reaching with her right hand and arm.[50]
Based on this determination, the ALJ found, at Step Four, that Ms. Bellard was
unable to perform any past relevant work.[51]   At Step Five, the ALJ found that,
considering Ms. Bellard's age, education, work experience, and residual functional
capacity, there are jobs that exist in significant numbers in the national economy that
she can perform.[52]

A.   **THE APPEALS COUNCIL PROPERLY CONSIDERED THE EVIDENCE
SUBMITTED AFTER THE HEARING.**

The Social Security regulations provide that if new and material evidence is
submitted to the Appeals Council after the ALJ has already rendered a decision, "the
Appeals Council shall consider the additional evidence only where it relates to the
period on or before the date of the administrative law judge hearing decision."[53]
When such evidence is submitted to the Appeals Council, the Appeals Council must
"evaluate the entire record including the new and material evidence."[54] If the Appeals

---

[50]    Rec. Doc. 7-3 at 31.

[51]    Rec. Doc. 7-3 at 32.

[52]    Rec. Doc. 7-3 at 33.

[53]    20 C.F.R. § 404.970(b)

[54]    20 C.F.R. § 404.970(b).

Council "finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record," then the Appeals Council is required to "review the case."[55]

In its notice, the Appeals Council expressly stated that it had considered Dr. McManus's questionnaire of November 5, 2008.[56]   Ms. Bellard argues that the Appeals Council had a duty to do more than affirm that it considered this evidence and was required to "*evaluate* the substance of Plaintiff's post-hearing evidence."[57] The undersigned has located no authority supporting Ms. Bellard's suggestion that a detailed explication of any new and material evidence must be articulated by the Appeals Council and included in its notice of the action taken with regard to the claim in order to satisfy the requirement that the new evidence be evaluated.   The undersigned finds that it was sufficient for the Appeals Council to note that it had considered the new evidence in reaching its decision.

Moreover, in a situation like the one presented here, when the Appeals Council considers new evidence and an appeal is filed, this court must review the ALJ's decision and determine whether there is substantial evidence in the record, which now

---

[55]      20 C.F.R. § 404.970(b).

[56]      Rec. Doc. 7-3 at 3.

[57]      Rec. Doc. 19 at 5 [emphasis in original].

-11-

includes the new evidence submitted after the hearing, to support the ALJ's decision.[58]  Consequently, any error by the Appeals Council may be remedied by judicial review.

The evidence that Ms. Bellard submitted to the Appeals Council after the ALJ rendered her decision consists of a six-page "Mental Impairment Questionnaire" that was filled out by Dr. Robert L. McManus of the Crowley Mental Health Clinic on November 5, 2008.[59]  The Commissioner argues Dr. McManus was not a treating physician, and therefore, his opinions should be given little weight.  However, Dr. McManus stated in the questionnaire that he saw Ms. Bellard monthly for medications and about every three months for a medical evaluation.[60]  The records from Crowley Mental Health Clinic that were reviewed by the ALJ indicate that Dr. McManus saw Ms. Bellard on November 29, 2007, January 24, 2008, January 30, 2008, March 27, 2008, and April 9, 2008.[61]  Those records also indicate that Dr. McManus evaluated Ms. Bellard on June 14, 2007, when he filled out an "Adult

---

[58]        *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005); *Nelson v. Sullivan*, 966 F.2d 363, 366 (5th Cir. 1992); *Browning v. Sullivan*, 958 F.2d 817, 823 (8th Cir. 1992); *Wilkins v. Sec'y, Dep't of Health & Human* Services, 953 F.2d 93, 96 (4th Cir. 1991).

[59]        Rec. Doc. 7-3 at 7-13.

[60]        Rec. Doc. 7-3 at 7.

[61]        Rec. Doc. 7-10 at 22-38.

-12-

Psychiatric Evaluation."[62]   Therefore, the Commissioner's argument that Dr. McManus's opinions are entitled to little weight because he was not Ms. Bellard's treating physician, had not examined Ms. Bellard, and had not signed any documents or progress notes in the record[63] lacks merit.

In the November 2008 questionnaire, Dr. McManus stated that Ms. Bellard had a bipolar mood disturbance secondary to depression, and that she had delusions or hallucinations secondary to depression in the past, as well as substance dependence in the past.[64]   He stated that she had infrequent panic attacks and no suicidal ideation or attempts.[65]   He stated that Ms. Bellard was "doing well" on her prescriptions.[66]   He also stated that she was having a "good response" to the medications with which she was being treated.[67]   He also recognized Ms. Bellard's orthopedic problems but declined to offer an opinion or "elaborate on [her] orthopedic problems."[68]

---

[62]      Rec. Doc. 7-10 at 33-38.

[63]      Rec. Doc. 14 at 3.

[64]      Rec. Doc. 7-3 at 7.

[65]      Rec. Doc. 7-3 at 8.

[66]      Rec. Doc. 7-3 at 8.

[67]      Rec. Doc. 7-3 at 9.

[68]      Rec. Doc. 7-3 at 11.

One section of the questionnaire asked Dr. McManus to rate Ms. Bellard's degree of limitation in several functional areas.  He noted that she had no restrictions in activities of daily living; moderate difficulties in maintaining social functioning; often had deficiencies in concentration, persistence, or pace, which is equivalent to a moderate rating; and had three or more episodes of deterioration or decompensation in work or work-like settings that caused her to withdraw from that situation or to experience exacerbation of signs and symptoms.[69]  This final rating is the only one that is equivalent to a marked deficiency.  Dr. McManus also noted that Ms. Bellard suffered from depression and anxiety, mood swings, and a depressed or melancholic demeanor that might affect her ability to work at a regular job on a sustained basis.[70] Dr. McManus indicated that he anticipated that Ms. Bellard would be absent from work about once a month for treatment.[71]  He did not express an opinion on how often she might miss work because of her impairments.[72]  Dr. McManus did not express an opinion regarding whether Ms. Bellard was disabled, nor did he express an opinion about whether she was capable of performing light duty work.

---

[69]     Rec. Doc. 7-3 at 11.

[70]     Rec. Doc. 7-3 at 11.

[71]     Rec. Doc. 7-3 at 11.

[72]     Rec. Doc. 7-3 at 10.

Ms. Bellard focuses on the section of the questionnaire in which Dr. McManus was asked to describe Ms. Bellard's ability to perform certain activities.  In each of the four listed categories – ability and aptitude to remember work-like procedures; ability and aptitude to understand and remember very short and simple instructions; ability and aptitude to carry out very short and simple instructions; and ability and aptitude to maintain attention for a two-hour segment – Dr. McManus rated Ms. Bellard as "fair."[73]  The form defines a fair rating as meaning that a person's "[a]bility to function in this area is seriously limited but not precluded."[74]  In explaining why he believed her limitations fall into the "fair" category, Dr. McManus attributed his opinion, at least in part, to Ms. Bellard's attitude, which he described as that of a person with a chip on their shoulder.[75]  He did not attribute his "fair" ratings to Ms. Bellard's physical complaints or to the severity of her depression, panic attacks, or agoraphobia.

Although the November 2008 questionnaire was submitted to the Appeals Council after the ALJ issued her decision and therefore "new," the undersigned finds that the Appeals Council did not err in failing to consider it an adequate basis to

---

[73]      Rec. Doc. 7-3 at 10.

[74]      Rec. Doc. 7-3 at 10.

[75]      Part of Dr. McManus's explanation is illegible.  Rec. Doc. 7-3 at 10.

change the ALJ's decision.  The information in the questionnaire shows that Ms.
Bellard's depression had improved since Dr. McManus first evaluated her in June
2007.  In 2007, Dr. McManus stated that Ms. Bellard had recurrent depression with
psychosis and agoraphobia with panic.[76]   In 2008, he stated that the psychotic
components of her depression, i.e., visual and auditory hallucinations or delusions,
were "in the past."[77]  The 2008 questionnaire contains no mention of agoraphobia,
and it indicates that her panic attacks were "infrequent."[78]  A comparison of the 2007
evaluation with the 2008 evaluation would support the conclusion that Ms. Bellard's
condition had improved and that she was responding well to treatment.

Ms. Bellard has also failed to demonstrate how the information set forth in Dr.
McManus's November 2008 evaluation demonstrates that she cannot perform light
duty work.  Although Dr. McManus noted on the questionnaire that Ms. Bellard's
mental impairments were limiting, he did  not state that she cannot perform light duty
work nor did he state that she was disabled.  In her briefing, Ms. Bellard describes her

---

[76]     Rec. Doc. 7-10 at 38.

[77]     Rec. Doc. 7-3 at 7.  According to Ms. Bellard's briefing, symptoms of psychosis include seeing or hearing things that are not there as well as delusional thoughts.  Rec. Doc. 13 at 9, n. 3.

[78]     Rec. Doc. 7-3 at 8.

depression as "longstanding,"[79] "debilitating,"[80] and "progressive."[81]  However, Dr. McManus does not use those words in either of his evaluations.

In summary, the information set forth on the November 2008 questionnaire does not "dilute the record to the point that the ALJ's ultimate finding is insufficiently supported."[82]  Accordingly, the ALJ's decision is not contrary to the old and new evidence, and the Appeals Council did not err in failing to remand the matter for consideration of the new evidence.

## B.   THE ALJ'S HYPOTHETICAL QUESTIONS WERE PROPER AND ADEQUATE.

An ALJ is permitted to rely on the expertise of a vocational expert to determine whether the plaintiff's residual work skills can be used in other occupations and in identifying the specific occupations in which those skills may be used.[83]  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."[84]

---

[79]   Rec. Doc. 13 at 6.

[80]   Rec. Doc. 13 at 6.

[81]   Rec. Doc. 13 at 7.

[82]   *Higginbotham v. Barnhart*, 163 Fed.App'x 279, 282 (5th Cir. 2006).

[83]   20 C.F.R. § 404.1566(e).

[84]   *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

To establish that work exists for a claimant at Steps Four and Five of the sequential disability determination process, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question.[85]  A hypothetical question posed by an ALJ to a vocational expert must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question.[86]  If, in making a disability determination, the ALJ relied on testimony elicited by a defective hypothetical question, the Commissioner did not carry his burden of proof to show that despite an impairment, a claimant could perform available work.[87]

Ms. Bellard contends that the ALJ erred in deciding that she is not disabled because the ALJ reached that conclusion by relying upon the vocational expert's responses to improper hypothetical questions posed at the hearing.  In particular, she argues that the ALJ

> did not incorporate into the Step 5 hypothetical question the non-exertional severe impairments which she *recognized* at Step 2 of the sequential evaluation process, i.e., psychosis, agoraphobia[,] or panic attacks...; neither

---

[85]     *Boyd v. Apfel*, 239 F.3d 698, 706-07 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[86]     *Bowling v. Shalala*, 36 F.3d at 436.

[87]     *Boyd v. Apfel*, 239 F.3d at 708.

-18-

did the ALJ include the non-exertional limitations and
restrictions associated with each severe impairment.[88]

Beverly Major is the vocational expert who testified at Ms. Bellard's hearing.

The ALJ asked her two questions.  First, the ALJ asked:

> If you have a hypothetical woman who's 50 with 12th grade
> or GED education and the past work as a CNA, sewing
> machine operator[,] and sitter or companion, ***and assume
> that person testified as Ms. Bellard did here this
> afternoon***, in your opinion, could she return to that past
> work and why or why not?[89]

Ms. Major replied that Ms. Bellard's inability to lift more than ten pounds and the

drowsiness caused by her pain medication "***along with other things that she testified***

***to***... would keep her from doing any of her past relevant work."[90]

The ALJ then asked:

> If you assume that you have our same hypothetical person.
> And if you assume that she could lift 20 pounds
> occasionally or 10 frequently and walk, stand[,] or sit six of
> eight [hours], would need a job with simple, one, two,
> three-step instructions because of depression, no working
> with the public, limited working with coworkers, and no
> reaching with the dominant upper extremity either forward

---

[88]     Rec. Doc. 13 at 10 [emphasis in original].

[89]     Rec. Doc. 7-3 at 58 [emphasis added].

[90]     Rec. Doc. 7-3 at 59 [emphasis added].

or over her head.  Are there any jobs you could identify
that would fit that hypothetical?[91]

Ms. Major replied that this hypothetical person would be able to perform unskilled

light duty work.[92]  Ms. Major also testified that there is a "pretty good amount of light

work" available,[93] including such jobs as light general office clerk, administrative

support worker, and shipping or receiving clerk.[94]

During the hearing, Ms. Bellard testified that she had been disabled since

falling and hitting her tailbone in 2005,[95] that she had problems with a nerve in her

neck and hand, that she suffered from depression, saw things, heard voices, and

stayed to herself because of her depression.[96]  She stated that her health care providers

wanted to hospitalize her for depression approximately a year before the hearing, but

no beds were available at the facility.[97]  She listed her doctors and her medications,

including at least four drugs for anxiety or depression.[98]  She testified that her

---

[91]     Rec. Doc. 7-3 at 59-60.

[92]     Rec. Doc. 7-3 at 60.

[93]     Rec. Doc. 7-3 at 60.

[94]     Rec. Doc. 7-3 at 60-61.

[95]     Rec. Doc. 7-3 at 51.

[96]     Rec. Doc. 7-3 at 51.

[97]     Rec. Doc. 7-3 at 53.

[98]     Rec. Doc. 7-3 at 53-54.

medications made her drowsy,[99] and that she could not walk very far or lift more than about ten pounds.[100]  She stated that her depression had worsened since the accident, that she had crying spells every day or every other day,[101] and that she did not go out.[102]  This testimony addressed the symptoms of her psychosis and agoraphobia. Ms. Bellard had the opportunity to discuss panic attacks, but did not mention them at the hearing.  The record contains no determination by any doctor who examined Ms. Bellard that she is unable to work.  This makes Ms. Bellard's testimony about her impairments and their effects all the more important.

When posing a hypothetical question to a vocational expert, an ALJ must reasonably incorporate in the question all of the claimant's disabilities that are recognized by the ALJ.[103]  The claimant's own testimony may provide an evidentiary basis for the question.[104]  In this case, Ms. Bellard testified about her depression, including the fact that it caused her to have auditory and visual hallucinations and isolate herself from others, as well as regarding the medications she took for the

---

[99]     Rec. Doc. 7-3 at 54.

[100]     Rec. Doc. 7-3 at 55.

[101]     Rec. Doc. 7-3 at 55.

[102]     Rec. Doc. 7-3 at 57.

[103]     *Bowling v. Shalala*, 36 F.3d at 436.

[104]     *Moore v. Callahan*, 122 F.3d 1067, 1 (5th Cir. 1997) (unpublished).

depression and their side effects.  The ALJ instructed the vocational expert to assume that the person in her hypothetical question would testify as Ms. Bellard did. Consequently, the hypothetical question asked of the vocational expert did take into account Ms. Bellard's depression and the limiting effects Ms. Bellard attributed to her depression.

In responding to the questions posed by the ALJ, the vocational expert alluded to Ms. Bellard's testimony at the hearing.  Thus, it is clear that the ALJ's questions and the vocational expert's responses to those questions took into account all of the alleged impairments that Ms. Bellard claimed to suffer from and that she discussed at the hearing.  Consequently, The ALJ's reliance on the hypothetical question posed by the vocational expert was proper because the question incorporated all of the disabilities that the ALJ ultimately determined to be credible.

Furthermore, Ms. Bellard's representative at the hearing did not ask any hypothetical questions of her own.  She was, however, afforded the opportunity to do so.  When the ALJ concluded her questioning of Ms. Major, she said:  "I don't have any other questions.  Let me see if Ms. Fry[e] has anything for you."  The transcript demonstrates that Ms. Frye then did ask the vocational expert some questions, but she did not attempt to include any additional impairments in the hypotheticals asked by

the ALJ nor did she ask any hypothetical questions of her own.[105]  Clearly, Ms.
Bellard's representative was afforded the opportunity to ask whatever questions of
Ms. Major that she thought appropriate.  But she did not attempt to alter, expand
upon, or remedy any perceived deficiencies in the hypothetical questions asked by the
ALJ.

　　　　While a party's failure to point out the problems in a defective hypothetical
does not automatically salvage that hypothetical as a proper basis for a determination
of non-disability,[106] it is clear that Ms. Bellard's representative had the opportunity
to remedy the ALJ's hypothetical questions if she found them inadequate but failed
to take advantage of that opportunity.

　　　　For a hypothetical question to be proper, it need only incorporate the
disabilities that the ALJ recognizes.[107]  This is accomplished if the hypothetical
incorporates the plaintiff's residual functional capacity.[108]  Here, the hypothetical
questions posed by the ALJ to the vocational expert at the hearing incorporated all

---

[105]　　Rec. Doc. 7-3 at 61-62.

[106]　　*Boyd v. Apfel*, 239 F.3d at 707, citing *Bowling v. Shalala*, 36 F.3d at 436.

[107]　　*Wise v. Barnhart*, 101 F. App'x 950, 951 (5th Cir. 2004) (per curiam) (unpublished),
citing *Bowling v. Shalala*, 36 F.3d at 435; *Morris v. Brown*, 864 F.2d 333, 336 (5th Cir. 1988).

[108]　　See *White v. Astrue*, 240 F. App'x 632, 634 (5th Cir. 2007) (per curiam) (unpublished)
("Because the VE's testimony, which [plaintiff] did not challenge through cross-examination, was
elicited by hypothetical questions incorporating the RFC determination, such reliance was proper.")

of the impairments that the ALJ found to be severe and all of the impairments that Ms. Bellard testified about, including her depression and its agoraphobic and psychotic components.  There is no reason to conclude that the vocational expert did not have all of the information needed to make a proper recommendation. Accordingly, the undersigned finds that the ALJ's hypothetical questions were adequate and appropriate.

Furthermore, an ALJ's hypothetical question produces reversible error only when the hypothetical question posed to the vocational expert by the ALJ fails to reasonably incorporate all disabilities of the claimant recognized by the ALJ, and the claimant or his representative is not afforded the opportunity to correct the deficiencies in the ALJ's question.[109]  Since Ms. Bellard's counsel was able to ask questions of the vocational expert at the hearing, but failed to rectify the alleged omissions in the ALJ's questions, there was no reversible error.

## CONCLUSION AND RECOMMENDATION

The undersigned finds that the ALJ's decision was based on the appropriate legal standard and is supported by substantial evidence.  The undersigned further finds that the Appeals Council did not violate its own procedures and did consider the

---

[109]     *Bowling v. Shalala*, 36 F.3d at 436.

"new and material" evidence submitted by the claimant, however, that evidence did not provide a basis to change the decision of the ALJ. Finally, the undersigned finds that the ALJ's determination that the claimant is capable of returning to work is supported by substantial evidence, that the hypothetical questions posed to the vocational expert were proper and provided an appropriate basis for that finding.

Therefore, for the reasons explained above,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be **AFFIRMED** and this matter be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by

Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 7th day of December, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

-26-