**RECEIVED**

JAN - 3 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| LUDY B. BELLARD | CIVIL ACTION NO. 09-1603 |
| VERSUS | JUDGE DOHERTY |
| MICHAEL J. ASTRUE, COMM'R OF SSA | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before this Court is a Report and Recommendation [Doc. 20] issued by the magistrate judge, in which the magistrate judge recommends the Commissioner's decision in this social security matter, denying benefits, be affirmed and the case dismissed. Claimant Ludy B. Bellard filed an objection to the magistrate judge's Report, wherein Ms. Bellard argues the decision of the ALJ is not supported by the evidence in the record, because new and material post-hearing evidence – recognized and acknowledged by the magistrate judge – is inconsistent with a finding of non-disability. Finding Ms. Bellard's objections have merit and for the following reasons, this Court SUSTAINS Ms. Bellard's objections and REVERSES AND REMANDS this matter to the Commissioner for further review in light of this Court's findings herein.

## I.    Factual and Procedural Background

As set forth in the magistrate judge's Report and Recommendation, Ms. Bellard is 53 years old. She has worked in the past as a sitter for the elderly or disabled people, and as a certified nursing assistant. She has also done janitorial work for an oil company, housekeeping work in a hospital, and has worked as a seamstress. In December 2004, Ms. Bellard was involved in a motor vehicle accident, and on October 6, 2006, she was injured in a slip and fall accident at work. Ms.

Bellard claims the injuries she sustained in the slip and fall have left her disabled. On November 13, 2006, Ms. Bellard applied for a period of disability and/or all Social Security insurance benefits to which she might be entitled, claiming she became disabled on October 6, 2005 due to back, neck, and leg injuries.  An ALJ determined although Ms. Bellard has severe impairments, including cervical degenerative disc disease, lumbar degenerative disc disease, obesity, recurrent depression, and agoraphobia with mania, none of her impairments or combination of impairments are disabling. The ALJ concluded Ms. Bellard can perform the jobs of general office clerk, administrative support worker, and shipping and receiving clerk return.

Ms. Bellard appealed to the Appeals Council and provided the Appeals Council with additional evidence concerning her alleged mental impairments.  This evidence included a "Mental Impairment Questionnaire" dated November 5, 2008 from Dr. Robert McManus[1] of the Crowley Mental Health Clinic.  In his Questionnaire, Dr. McManus reported Ms. Bellard had a bipolar mood disturbance secondary to depression, and she had delusions or hallucinations secondary to depression in the past, as well as substance dependence in the past.  Dr. McManus stated Ms. Bellard was "doing well" on her medications.  With respect to her functional limitations, Dr. McManus reported Ms. Bellard had no restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, often had deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, and had *repeated (three or more) episodes of deterioration or decompensation in a work or work-like setting which caused the individual to withdraw from that*

---

[1] Dr. McManus's specialty – whether a psychologist or a psychiatrist – is not clear to the Court.  However, the Appeals Council noted Dr. McManus is an "M.D."

*situation or to experience exacerbation of signs and symptoms.*[2]   In another section of the report,

Dr. McManus is asked to rate Ms. Bellard's "mental abilities and aptitude needed to do unskilled

work." In all four categories – remembering work-like procedures; understanding and remembering

very short and simple instructions; carrying out very short and simple instructions; and maintaining

attention for a two-hour segment – Ms. Bellard scored "fair." The questionnaire defines a "fair"

rating as the person's "ability to function in this area is seriously limited but not precluded." Dr.

McManus also assessed Ms. Belard with a current "Global Assessment of Functioning" ("GAF")

score of 45, and noted her highest score over the past year was a 45.[3]

On July 9, 2009, the Appeals Council notified Ms. Bellard it had considered her briefing and

the additional materials but had determined there was no basis for changing the ALJ's decision.

Specifically, the Appeals Council stated:

> .....we considered the contentions contained in your representative's letter dated
> November 4, 2008, as well as the mental impairment questionnaire from Robert
> McManus, M.D., dated November 5, 2008.
>
> We found that this information does not provide a basis for changing the
> Administrative Law Judge's decision.[4]
>
> Ms. Bellard subsequently filed the instant appeal in this Court.

---

[2] *See* Doc. 7-3 at pp. 6-11.

[3] In *Boyd v. Apfel*, 239 F.3d 698, 701 (5th Cir. 2001), the Fifth Circuit noted "GAF is a standard measurement of an individual's overall functioning level 'with respect only to psychological, social, and occupational functioning.'" 239 F.3d at 701, *citing* American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)(DSM-IV). The court further noted a GAF score of 41 to 50 is classified as reflecting "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." In *Foster v. Astrue*, 277 Fed.Appx. 462, 464, 2008 WL 1983424, 2 (5th Cir. 2008), the Fifth Circuit noted a "GAF score of 48 . . . tends to indicate 'serious problems.'"

[4] *See* Doc. 7-3, at p. 1-2.

## II.    The Magistrate Judge's Report and Recommendation

On appeal, Ms. Randall contends the Commissioner's ruling is erroneous for two reasons: (1) the Appeals Council failed to follow its own policies and procedures following the receipt of post-hearing evidence concerning Ms. Bellard's depression and alleged mental impairments; and (2) the ALJ posed a defective Step 5 hypothetical question to the vocational expert at the hearing.

The magistrate judge considered the post-hearing evidence and concluded it was, indeed, new evidence. Nevertheless, the magistrate judge concluded the Appeals Council did not err in failing to consider the questionnaire an adequate basis to change the ALJ's decision. In so concluding, the magistrate judge stated he had "located no authority supporting Ms. Bellard's suggestion that a detailed explanation of any new and material evidence must be articulated by the Appeals Council and included in its notice of the action taken with regard to the claim in order to satisfy the requirement that the new evidence be evaluated." The magistrate judge therefore concluded it was sufficient for the Appeals Council to note it had considered the new evidence in reaching its decision. Additionally, because an appeal was filed, the magistrate judge concluded because this Court must review the ALJ's decision and determine whether there is substantial evidence in the record to support the ALJ's conclusion – which evidence now includes the new evidence submitted after the hearing – any error by the Appeals Council may be remedied by judicial review. In this case, the magistrate judge concluded the Appeals Council's failure to change the ALJ's decision after review of the new evidence was not error. The magistrate judge concluded the questionnaire shows Ms. Bellard's mental impairments had improved from 2007 to 2008 and that she was responding well to treatment. Therefore, the magistrate judge concluded the ALJ's decision is not contrary to the old and new evidence, and the Appeals Council did not err in failing to remand the matter for

consideration of the new evidence.

## II.      Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendations to which objection is made." Section 636(b)(1) further states "[a] judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Therefore, this Court makes a *de novo* review of the portions of the magistrate judge's report to which the claimant objects. *See Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

1.      **Assignment of Error No. 1 – The Appeals Council failed to follow its own policies and procedures following the receipt of post-hearing evidence concerning Ms. Bellard's depression and alleged mental impairments**

Ms. Bellard alleges the Appeals Council failed to follow its own policy and procedure with regard to the submission of post-hearing evidence. The medical evidence in question includes Dr. McManus's report, in which Dr. McManus states Ms. Bellard had "repeated (three or more) episodes of deterioration or decompensation in a work or work-like setting which caused the individual to withdraw from that situation or to experience exacerbation of signs and symptoms," which Ms. Bellard argues constitutes a marked impairment.[5]

The magistrate judge concluded, and this Court agrees, the Appeals Council properly concluded Dr. McManus's report is new and material evidence that is relevant to Ms. Bellard's

---

[5] A "marked limitation" is one that "interferes seriously with your ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). It is a limitation that is "more than moderate" but "less than extreme." *Id.*

claim. 20 C.F.R. 416.1476(1) states:

> In reviewing decisions based on an application for benefits, the Appeals Council will consider the evidence in the administrative law judge hearing record *and any new and material evidence only if it relates to the period on or before the date of the administrative law judge hearing decision. . . .*

(emphasis added). As Dr. McManus's report relates to the period on or before the date of the ALJ's decision, it was properly considered by the Appeals Council.

However, although the Appeals Council considered the new evidence, it is not clear the Appeals Council gave sufficient consideration to Dr. McManus's report. The *Hearings, Appeals and Litigation Law Manual* (HALLEX) Section I-3-501 (Nov. 11, 1994), otherwise known as the "HALLEX" manual, was created by the Social Security Administration to "convey guiding principles, procedural guidance and information" to the staff of the Social Security Administration's Office of Hearings and Appeals. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). HALLEX provides that the Appeals Council must "specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review." *Newton*, 209 F.3d at 459. Although there is a split in the circuits regarding the legal effect of HALLEX, the Fifth Circuit noted in *Newton* that HALLEX is binding to the extent that violations can be grounds for granting relief:

> While HALLEX does not carry the authority of law, this court has held that "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir.1981). If prejudice results from a violation, the result cannot stand. *Id.*

209 F.3d at 459. *But see Moore v. Apfel*, 216 F.3d 864, 868-69 (9th Cir. 2000) (finding that HALLEX is an internal manual with no legal force). *See also Tineo ex rel Tineo v. Barnhart*, 2002 WL 31163889, *3 (S.D.N.Y.2002) (noting the split in the circuits, but declining to reach the question

6

of whether HALLEX provides an independent source of the Commissioner's duties to applicants or otherwise decide its legal authority).

The *Newton* court addressed the failure of the Appeals Council to follow its internal procedures:

> Newton requested review from the Appeals Council based on new medical evidence. *When the Appeals Council rejected her appeal, the Council issued a standard form denial.* The *Hearings, Appeals and Litigation Law Manual* (HALLEX) Section I-3-501 (Nov. 11, 1994), *provides that the Appeals Council must "specifically address additional evidence or legal arguments or contentions submitted in connection with the request for review." The Council did not specifically address Newton's new medical evidence, thus violating its own internal procedures.*

*Newton*, 209 F.3d at 459 (emphasis added). The court ultimately determined the additional evidence was not relevant to Newton's claim because the new medical evidence consisted of opinions that post-dated the period for which the claimant sought benefits. Consequently, the court held the Appeals Council's failure to specifically address the evidence was not grounds for relief. *Id.* at 459-60. However, the court reached a different conclusion in *Ortega v. Apfel*, 2001 WL 681723, *4 (W.D.Tex.2001). In *Ortega*, the court noted:

> Finally, it bears pointing out that the Appeals Council violated its own internal procedures in this case *by failing to specifically address the additional evidence submitted by the Plaintiff in connection with his request for review. See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir.2000). *Rather, the Appeals Council only issued a standard denial form in rejecting the Plaintiff's request for review.* [Record citation omitted]. As explained by the court in *Newton*, "[i]f prejudice results from a violation [by an administrative agency of its own procedures], the result cannot stand." 209 F.3d at 459. Moreover, because the Appeals Council "perfunctorily adhered to the decision of the hearing examiner," it cannot be said that the Commissioner's decision is supported by substantial evidence. *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir.1980). *The Appeals Council clearly did not adequately consider the Plaintiff's new, material evidence in affirming the ALJ's decision. Accordingly, the Court is compelled to remand this case for a determination of the Plaintiff's disability reached on the total record. Id. Thus, because the Court finds that the Plaintiff's I.Q. test and report card were new and material evidence, remand*

7

*of this case for consideration of that evidence is appropriate.*

2001 WL 681723, *4 (emphasis added).  *See also Epps v. Harris*, 624 F.2d 1267, 1273 (5ᵗʰ Cir.

1980) (Appeals Council's failure to adequately evaluate post-hearing evidence was, in and of itself,

grounds for remand).  Noted the court in *Epps*:

> We recognize that the claimant bears a heavy burden in proving disability.
> Nevertheless, we cannot find that the record in this case contains substantial evidence
> supporting the Secretary's denial of Epps' disability eligibility. The ALJ predicated
> his finding that Epps' back problem did not result in disabling pain or other
> incapacitating restrictions in significant part on his understanding that Epps had not
> required radical treatment. *Yet the Appeals Council adopted the hearing examiner's
> decision without addressing post-hearing evidence of disability submitted by Dr.
> Kerr that expressly stated that conservative treatment had failed and that Epps had
> recently been referred for consideration of the radical intervention believed by the
> ALJ to be an important indicator of disability.* Moreover, Dr. Kerr informed the
> Appeals Council that Epps continued to suffer pain and limited range of motion, that
> the contemplated surgery would not increase his productivity, and that there was no
> possibility that Epps would ever be fit to work in any type of job. *Although the
> Appeals Council acknowledged that Epps had submitted new evidence, it did not
> adequately evaluate it. Rather, it perfunctorily adhered to the decision of the hearing
> examiner. This failure alone makes us unable to hold that the Secretary's findings
> are supported by substantial evidence and requires us to remand this case for a
> determination of Epps' disability eligibility reached on the total record.*

624 F.2d at 1273 (emphasis added), *citing Mann v. Gardner*, 380 F.2d 182, 187 (5ᵗʰ Cir. 1967).

In the instant case, the Appeals Council violated its internal procedures by failing to

specifically address the additional evidence submitted by Ms. Bellard in connection with her request

for review.  Rather, the Appeals Council issued a standard denial form in rejecting Ms. Bellard's

request, which states:

> .....we considered the contentions contained in your representative's letter dated
> November 4, 2008, as well as the mental impairment questionnaire from Robert
> McManus, M.D., dated November 5, 2008.
>
> We found that this information does not provide a basis for changing the

---

Administrative Law Judge's decision.[6]

Prejudice resulted from this course, because the additional evidence appears to support Ms. Bellard's claims for benefits. Specifically, Dr. McManus reports although Ms. Bellard was "doing well" on her medications, Ms. Bellard had *"repeated (three or more) episodes of deterioration or decompensation in a work or work-like setting which caused the individual to withdraw from that situation or to experience exacerbation of signs and symptoms."*[7] In another section of the report, Dr. McManus is asked to rate Ms. Bellard's "mental abilities and aptitude needed to do unskilled work." In all four categories – remembering work-like procedures; understanding and remembering very short and simple instructions; carrying out very short and simple instructions; and maintaining attention for a two-hour segment – Ms. Bellard scored "fair." The questionnaire defines a "fair" rating as the persons's "ability to function in this area is seriously limited but not precluded." The foregoing medical evidence contradicts the ALJ's conclusion that Ms. Bellard has had *"no episodes of decompensation."*[8] Indeed, in her decision, the ALJ stated "There have been no complaints of anything like this," a finding clearly contradicted by Dr. McManus's report. Therefore, the ALJ's decision is not consistent with the new evidence. Moreover, the additional medical evidence first presented to the Appeals Council appears to support Ms. Bellard's claim that she has disabling mental impairments and also appears to undercut the ALJ's assessment of Ms. Bellard's residual functional capacity. At the very least, the ALJ's decision does not appear to incorporate or reflect Dr. McManus's GAF score of 45, which the Fifth Circuit has noted reflects "serious symptoms" or

---

[6] *See* Doc. 7-3, at p. 1-2.

[7] *Id.* at pp. 6-11.

[8] *Id.* at p. 29.

"serious problems." *See, e.g., Boyd v. Apfel*, 239 F.3d 698, 701 (5th Cir. 2001) (a GAF score of 41 to 50 is classified as reflecting "serious symptoms or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" *see also Foster v. Astrue*, 277 Fed.Appx. 462, 464, 2008 WL 1983424, 2 (5th Cir. 2008) (a "GAF score of 48 . . . tends to indicate 'serious problems.'" ).

This Court's conclusion is bolstered by the magistrate judge's determination that Dr. McManus – who treated Ms. Bellard on November 29, 2007, January 30, 2009, March 27, 2008, April 9, 2008 and additionally evaluated Ms. Bellard on June 14, 2007 – is, essentially, a treating physician. The opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), *citing Barajas v. Heckler*, 738 F.2d 641, 644 (5th Cir.1984); *Smith v. Schweiker*, 646 F.2d 1075, 1081 (5th Cir.1981); *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir.1981); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir.1980). There are exceptions to this principle. The ALJ may give less weight to a treating physician's opinion when (1) "there is good cause shown to the contrary," *Perez*, 653 F.2d at 1001; *Smith*, 646 F.2d at 1081; *Fruge*, 631 F.2d at 1246, as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir.1980); *see also Oldham v. Schweiker*, 660 F.2d 1078, 1084-85 (5th Cir.1981), is not supported by medically acceptable clinical laboratory diagnostic techniques, 20 C.F.R. §404.1526 (1985), or is otherwise unsupported by the evidence. *E.g., Warncke*, 619 F.2d at 417; *Oldham*, 660 F.2d at 1084. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for

disability benefits." *Scott v. Heckler,* 770 F.2d at 485, *citing Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982). However, an ALJ cannot reject a medical opinion without an explanation. *Loza v. Apfel,* 219 F.3d 378, 395 (5th Cir. 2000), *citing Strickland v. Harris,* 615 F.2d 1103, 1110 (5th Cir.1980); *Goodley v. Harris,* 608 F.2d 234, 236 (5th Cir.1979).

Because the ALJ did not have the benefit of Dr. McManus's November 8, 2005 report, she did not have an opportunity to evaluate the evidence contained therein and either adopt that evidence or discount it. This Court concludes the ALJ should be given an opportunity to evaluate the evidence contained in Dr. McManus's report, along with the rest of the all the medical evidence presented by the claimant, to determine whether her mental impairments – either alone ir in combination with her other impairments – are disabling.

1.      **Assignment of Error No. 2 – The ALJ posed a defective Step 5 hypothetical question to the vocational expert at the hearing**

Ms. Bellard alleges the ALJ posed a defective Step 5 hypothetical question to the vocational expert at the hearing. This Court notes the hypothetical questions posed to the vocational expert did include certain aspects of Ms. Bellard's limitations imposed by her mental impairments, but did not include the potential critical evidence that Ms. Bellard has suffered from repeated episodes of decompensation. This is so because the ALJ did not have the benefit of Dr. McManus's report at the time of the hearing. Therefore, clearly, the hypothetical questions posed to the vocational expert do not reflect all of the limitations as set forth in Dr. McManus's report. Should the ALJ conclude Dr. McManus's findings are contradicted elsewhere in the record or are otherwise not supported, and, therefore, should not be included in the hypothetical questions posed to the vocational expert, the ALJ must articulate reasons for so concluding.

### *Conclusion*

Considering the foregoing, the undersigned concludes that remand is appropriate this matter. *See Ferguson v. Schweiker*, 641 F.2d 243, 250, n. 8 (5th Cir.1981) (remand is appropriate upon a showing of "good cause," which includes an "inability to make a definitive ruling concerning a claimant's disability based on the record before the court."). Therefore, the decision of the ALJ is REVERSED and the instant matter is REMANDED for further proceedings consistent with the findings herein. Specifically, on remand, it is ORDERED that the ALJ consider whether the evidence submitted post-hearing, including Dr. McManus's November 5, 2008 report, changes her determination that Ms. Bellard is not disabled. The ALJ shall also consider whether her previous assessment of Ms. Bellard's residual functional capacity and resulting conclusion that Ms. Bellard can perform the jobs of general office clerk, administrative support worker, and shipping and receiving clerk return is altered in light of the new evidence.

Any judgment entered herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA). *See Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this _____ day of January 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

12